UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ROBIN MYRICKS,**       Plaintiff, | |
| v. | Case No. 2:22-cv-543-CLM |
| **KILOLO KIJIKAZI,** **Acting Commissioner of the Social Security Administration,**       Defendant. | |

# MEMORANDUM OPINION

Robin Myricks seeks disability and disability insurance benefits from the Social Security Administration ("SSA") based on several impairments. The SSA denied Myricks' application in an opinion written by an Administrative Law Judge ("ALJ").

Myricks argues: (1) that the ALJ erred by finding that her cervical degenerative disc disease was a non-severe impairment, and (2) that substantial evidence doesn't support the ALJ's evaluation of Myricks' complaints under the Eleventh Circuit's pain standard.

As detailed below, the ALJ applied the correct legal standards and substantial evidence supports her decision. So the court will **AFFIRM** the SSA's denial of benefits.

1

## I.     STATEMENT OF THE CASE

### A.     Myricks' Disability, as told to the ALJ

Myricks was 58 years old at the time of the ALJ's decision. (R. 235, 48). Myricks completed four or more years of college and has specialized training in the School of Business as an administrative office assistant. (R. 240). And Myricks has past relevant work as an underwriting clerk and customer service clerk. (R. 73, 240).

At the ALJ hearing, Myricks testified that she was diagnosed with Type 1 diabetes when she was 19 and that she uses an insulin pump. (R. 62). In 2001, Myricks was diagnosed with breast cancer, and she was diagnosed with sarcoma in 2019. (R. 63). As of April 2020, Myricks' oncologist had removed the sarcoma and noted that Myricks had no restrictions from the sarcoma. (R. 64–65). But Myricks still must follow up with PET scans every three months to make sure that the sarcoma doesn't pop up anywhere else. (*Id.*). According to Myricks, she has problems in her neck and both arms that result in a constant throbbing pain that makes her unable to lift her arms above her head. (R. 65). And Myricks suffers from both arthritis and vision problems. (R. 66). Plus, Myricks has gastroparesis, which causes pain in her upper stomach, nausea, no appetite, heartburn, and hemorrhoids. (R. 68–69).

Myricks says that on a typical day she can walk for only 15 or 20 minutes before needing to take a break. (R. 70). And Myricks can sit up in a chair for only about 20 minutes before needing to move around. (*Id.*). Myricks also uses a lot of ice on her back and neck. (R. 71). Because of her vision problems, Myricks' husband does most of the driving. (*Id.*). But Myricks will sometimes drive herself to the store. (*Id.*). It's also difficult for Myricks to reach with either arm, and Myricks needs to hold onto something to bend at the waist. (R. 72). Because Myricks suffers from PTSD and anxiety, she experiences panic attacks, problems sleeping, and irritability. (R. 72).

## B. Determining Disability

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| | The 5-Step Test | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| | *Determine Residual Functional Capacity* | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C.     Myricks' Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Myricks applied for disability insurance benefits and a period of disability in May 2020, claiming that she could not work because of various ailments, including malignant sarcoma, breast cancer, insulin dependent diabetes mellitus, depression, pinched nerve, cervical disc disorder, memory loss, chronic fatigue, and gastroparesis. After receiving an initial denial in October 2020, Myricks requested a hearing, which the ALJ conducted in December 2021. The ALJ ultimately issued an opinion denying Myricks' claims later that month.

At Step 1, the ALJ determined that Myricks was not engaged in substantial gainful activity and thus her claims would progress to Step 2. (R. 40).

At Step 2, the ALJ determined that Myricks suffered from the following severe impairments: insulin dependent diabetes mellitus with gastroparesis and post radiation sarcoma. (R. 40–42). But the ALJ concluded that degenerative changes to Myricks' bilateral knees, cervical spine, and right shoulder were non-severe impairments. (R. 41).

At Step 3, the ALJ found that none of Myricks' impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. (R. 42–43). So the ALJ next had to determine Myricks' residual functional capacity.

The ALJ determined that Myricks had the residual functional capacity to perform light work with these added limitations:

- Myricks can only frequently climb ramps and stairs.

- Myricks can never climb ladders, ropes, or scaffolds.

- Myricks cannot balance as defined by the Dictionary of Occupational Titles ("DOT").

- Myricks can frequently stoop, kneel, crouch, and crawl.

- Myricks must avoid unprotected heights or hazardous machinery.

- Myricks must avoid concentrated exposure to temperature extremes.

- Myricks can only occasionally engage in overhead reaching and pushing and pulling of arm controls.

(R. 43).

At Step 4, the ALJ found that Myricks could perform her past relevant work as an underwriting clerk and customer service clerk. (R. 48). So the ALJ found that Myricks was not disabled under the Social Security Act without proceeding to Step 5 of the 5-Step test.

Myricks requested an Appeals Council review of the ALJ's decision. (R. 1–7). The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.  STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is narrow. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.  LEGAL ANALYSIS

Myricks makes two arguments for why the ALJ erred. First, Myricks says that the ALJ erred by finding that her cervical degenerative disc disease was a non-severe impairment. Second, Myricks asserts that substantial evidence doesn't support the ALJ's application of the Eleventh Circuit's pain standard. The court will address each argument in turn.

### A.  ALJ's Step 2 Finding

At Step 2 of the 5-step process, the ALJ found that Myricks suffered from the severe impairments of insulin dependent diabetes mellitus with gastroparesis and post radiation sarcoma. (R. 40–42). But the ALJ determined that several of Myricks' other impairments, including her cervical degenerative disc disease, were non-severe. (R. 41). An impairment or combination of impairments is severe if it significantly limits a claimant's ability to perform basic work activities. 20 CFR § 404.1520(c). An impairment or combination of impairments isn't severe "if it is a slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).

1. <u>Substantial evidence supports finding</u>: Substantial evidence supports the ALJ's finding that Myricks' cervical degenerative disc disease was a non-severe impairment. As the ALJ noted, the medical records describe the degenerative changes in Myricks' spine as mild. (R. 412, 731, 1447). For example, an MRI of Myricks' spine found that the disc height and disc signal intensity were slightly decreased at the C6-C7 level. (R. 412). There was also mild disc desiccation and a small central disc protrusion deforming the ventral surface of the thecal sac without compressing the cord. (*Id.*). Otherwise, there weren't any abnormalities. (*Id.*). Imaging of Myricks' shoulders also revealed only mild degenerative changes. (R. 1445–46, 1559). And some physical examinations showed Myricks to have full range of motion of the extremities, no neurological deficits, no tenderness, and a normal gait. (*See, e.g.*, R. 1556, 409).

Myricks points out that other physical examinations show a decreased range of cervical rotation and that she received an epidural block and chiropractic treatment for her neck pain. Myricks also notes that she consistently sought treatment for and complained of pain in her neck throughout the relevant period. But this court cannot "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). And a reasonable person could review the medical records discussed above and agree with the ALJ's Step 2 finding that Myricks' cervical degenerative disc disease was a non-severe impairment. So substantial evidence supports that determination. *See Crawford*, 363 F.3d at 1158.

2. <u>Any error was harmless</u>: Even if the ALJ should have found that Myricks' cervical degenerative disc disease was a severe impairment, Myricks hasn't shown that the ALJ's Step 2 analysis prejudiced her. "[T]he finding of any severe impairment, whether or not it results from a single severe impairment or a combination of impairments that together qualify as 'severe,' is enough to satisfy step two." *Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015). The ALJ must then consider all impairments (both severe and non-severe) in combination at

Step 3. *See Heatley v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). To show that she properly considered the combination of impairments, an ALJ need only say that the claimant's combination of impairments failed to meet or equal the severity of any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *See Jones v. HHS*, 941 F.2d 1529, 1533 (11th Cir. 1991).

Though the ALJ found that Myricks' cervical degenerative disc disease wasn't a severe impairment, the ALJ found that Myricks suffered from several other severe impairments. (R. 40–42). So the ALJ proceeded past Step 2 and considered at Step 3 whether Myricks' combination of impairments met the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (R. 42 ("Through the date last insured, the claimant did not have an impairment ***or combination of impairments*** that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (emphasis added))). And it's clear that Myricks' cervical degenerative disc disease was one of the impairments that the ALJ considered because the ALJ determined that Myricks' impairments failed to meet Listing 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root(s)) and Listing 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina). (R. 42–43). The ALJ also considered Myricks' cervical degenerative disc disease when assessing Myricks' residual functional capacity, which governs Steps 4 and 5. For example, when discussing Myricks' medical history, the ALJ noted that Myricks presented to Trussville Chiropractic with neck and lower back pain. (R. 45). And the ALJ limited Myricks to occasional overhead reaching and pushing and pulling of arm controls. (R. 43).

Because the ALJ proceeded past Step 2 and considered Myricks' non-severe impairments in the later steps of the 5-step process, any error in not classifying Myricks' cervical degenerative disc disease as severe is harmless.

### B. Pain Standard

Myricks next argues that the ALJ failed to properly evaluate her subjective pain testimony under the Eleventh Circuit's pain standard and that substantial evidence doesn't support the ALJ's credibility determination. An ALJ must apply the two-step "pain standard" to subjective testimony on pain and other symptoms. Under this standard, the claimant must first present "evidence of an underlying medical condition." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If she does, the claimant must then either: (a) present "objective medical evidence confirming the severity of the alleged pain," or (b) show "that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *See id.* This court "will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The ALJ determined that Myricks' "medically determinable impairments could reasonably be expected to cause some symptoms and/or functional limitations." (R. 44). But the ALJ found that Myricks' statements about "the intensity, persistence, and limiting effects of these symptoms are inconsistent with the objective medical evidence, treatment regimen and response to treatment, and daily activities." (R. 44–45). In other words, the ALJ found that Myricks made it past the first step—*i.e.*, she showed evidence of a medically determinable impairment—but not the second step of linking her subjective pain symptoms to the medically determinable impairment. To support this conclusion, the ALJ cited Myricks' treatment history, medical records, daily activities, and the opinions of the State agency physicians. (R. 45–47). This is a proper application of the pain standard, so the ALJ's credibility finding will stand unless it lacks the support of substantial evidence. *See Mitchell*, 771 F.3d at 782.

1. <u>Opinion evidence comment</u>: Myricks argues that substantial evidence doesn't support the ALJ's credibility determination because the ALJ impermissibly inferred from her physicians' silence that she wasn't

9

disabled or unable to perform work related activities. As Myricks points out, the ALJ started her discussion of the evidence by "point[ing] out that no treating, examining, or reviewing doctor has indicated the claimant was disabled or otherwise unable to perform work related activities." (R. 45). Myricks says this was improper because "no inference should be taken" from a physician's silence on a claimant's restrictions. *See Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).

The ALJ didn't infer that Myricks cannot work from the lack of a physician's recommendation that Myricks be found disabled. Instead, the ALJ merely noted that there was no opinion evidence claiming that Myricks couldn't perform work related activities before explaining that Myricks' medical records and daily activities undermined her subjective pain testimony. "[N]o inference can be drawn from silence. However, since the plaintiff has the burden to demonstrate that he is disabled, the absence of any supporting statement from a treating physician is noteworthy." *Harris v. Astrue*, Case No. 8:10-CV-1768-T-TW, 2011 WL 5358707, at *6 (M.D. Fla. Nov. 3, 2011). And it's particularly relevant here because the only opinion evidence in the record stated that Myricks could perform a reduced range of medium work, which was less restrictive than the residual functional capacity that the ALJ assessed. (R. 46, 88–91, 108–12). In short, the court rejects the argument that the ALJ's credibility determination is tainted by an improper inference. But even if the ALJ did make an improper inference, the ALJ's analysis didn't hinge on this inference and instead focused on the legitimate reasons discussed below to reach her credibility determination.

2. <u>Daily life activities</u>: Aside from finding that the objective medical evidence and Myricks' treatment history undermined Myricks' subjective testimony, the ALJ also found several of Myricks' daily life activities to contradict her testimony. For example, the ALJ noted that Myricks could drive short distances, shop alone, prepare meals, and do simple chores. (R. 46). The ALJ also pointed to treatment notes that said Myricks could care for herself and didn't have trouble walking, climbing stairs, dressing, bathing, or doing errands alone. (R. 45).

A claimant's admission that she participates in daily activities for short durations does not disqualify the claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), but it is appropriate for an ALJ to consider daily activities relevant to a claimant's subjective pain allegations, *see* 20 CFR § 404.1529(c)(3)(i).

Myricks asserts that the ALJ's description of her daily activities is inaccurate because she did not note several limitations Myricks identified when reporting her activities. For example, in her adult function report, Myricks stated that her husband assists her with her personal care. (R. 289). Myricks also reported that she cannot walk, sit, or shop for long periods of time. (R. 292). And Myricks said that she cannot participate in physical activities. (*Id.*). Plus, Myricks can lift only 3 to 4 pounds and walk 20 to 30 minutes before needing to rest. (R. 293).

The ALJ didn't rely on Myricks' daily activities alone to reach her credibility determination. Instead, the ALJ mainly considered Myricks' medical records and the opinion evidence to determine that Myricks' pain wasn't as severe as alleged. (R. 44–47). And notably Myricks doesn't challenge the ALJ's characterization of her medical records or the opinion evidence. Having reviewed the evidence cited by Myricks as well as the evidence cited by the ALJ, the court finds that a reasonable mind could reach the same conclusion as the ALJ. As a result, substantial evidence supports the ALJ's credibility determination.

—

In summary, both Myricks' arguments for why the ALJ erred in evaluating her subjective pain testimony fail. Even though the court may have made a different credibility determination than the ALJ, the ALJ did not reversibly err. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 925, 939 (11th Cir. 2011) ("The question is not . . . whether the ALJ could have reasonably credited [Myricks'] testimony, but whether the ALJ was clearly wrong to discredit it.").

11

## IV. CONCLUSION

The court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**Done** on July 31, 2023.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE